## NORTHUMBERLAND COUNTY.

JULY TERM, 1883, No. 109.          APRIL 30, 1884.

### Smith *v.* Savidge.

1. A testator, by his last will and testament, made the following provision: " My son Levi is to have $2,000 out of my estate before a distribution is made, and he is to hold all my clothing without charge, and I do appoint my son George as a committee for my son Levi, to take charge of all his money and pay him the interest and so much of the principal that will give him a comfort support, and after his death, of my son Levi, then all his estate shall be equal divided between all his children. * * * My son Charles shall not have his share in his hands unless he doth absolutely reform of his evil habits. If he don't, then my executors shall petition to court, appoint a suitable person as a committee to take charge of his money in trust and pay him the interest and so much of the principal that he may need for his support." *Held,* that neither the principal nor interest of the bequest to Levi was liable to attachment by his creditors.

2. The use of the word "committee," in the succeeding clause in the sense in which it is used in the acts of Assembly, leaves no doubt as to the intention of the testator when using it in the bequest to Levi.

3. The interest was not to go to the donee absolutely, but to be appropriated to his support.

4. Park *v.* Matthews, 12 Casey, 28, and Trust Co. *v.* Chambers, 10 Wr., 485, distinguished.

Before GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.; MERCUR, C. J., and CLARK, J., absent.

Error to the Court of Common Pleas of *Northumberland County.*

Attachment *sur* judgment by William Savidge against Levi Smith, with notice to George W. Smith, trustee under the will of John Smith, deceased, garnishee.

Rule to show cause why judgment should not be opened

and George W. Smith, testamentary committee of Levi Smith, let into a defense, and why the attachment execution should not be set aside and judgment and execution thereon be restrained.

Rule on garnishee to show cause why judgment should not be entered against him for the amount of judgment, interest, and costs.

Interrogatories and answers were filed, and the above rules taken.

Depositions were taken under these rules, from which the following facts appear :

John Smith died on April 23, 1877, leaving a will, which was duly probated, in which he directed, *inter alia:*

"My son Levi is to have two thousand dollars out of my estate before a distribution is made, and he is to hold all my clothing without charge, and I do appoint my son George as a committee for my son Levi, to take charge of all his money and pay him the interest and so much of the principal that will give him a comfort support, and after his death, of my son Levi, then all his estate shall be equal divided between all his children, and the balance of all my estate shall be equal divided between all my children. My son Charles shall not have his share in his hands unless he doth absolutely reform of his evil habits. If he don't, then my executors shall petition to the Court, appoint a suitable person as a committee to take charge of his money in trust, and pay him the interest and so much of the principal that he may need for his support, and after his death, then his children shall have her share of my estate."

George W. Smith accepted the trust for his brother Levi under this will, and received from the executors the sum of $2,785 50, $1,730 of which was in two notes. About two years interest had been paid on the two notes. The amount expended was $1,165 03.

In 1874, Levi Smith had purchased from the plaintiff goods amounting to $130 08, which, with interest to August 25, 1880, amounted to $167 11, and for this amount, on August 25, 1880, he signed a judgment note in favor of plaintiff, payable one day after date, and waiving exemption and bankrupt laws, &c. This judgment note was filed October 18, 1882, and the above-mentioned attachment issued thereon.

There was testimony on the part of the garnishee to show that Levi Smith was of weak or unsound mind at the time of purchasing the goods and at the time he

[Smith *v.* Savidge.]

signed the judgment note.    This was contradicted by the testimony of plaintiff's witnesses.

The garnishee offered in evidence an inquisition in lunacy, dated February 5, 1883, in which it was found that "Levi Smith is, at the time of the taking of this inquisition, a lunatic, and has been so for the space of forty years last past, and does not enjoy lucid intervals."

On February 7, 1883, this finding was traversed, and the case ordered down for trial.

The court below, ROCKEFELLER, P. J., discharged the rule to open the judgment and set aside the attachment, &c., and gave judgment for the plaintiff for the amount of interest in the hands of the garnishee, or so much thereof as will pay his judgment, interest, and costs.

Counsel for garnishee excepted to the findings of the court.

The garnishee then took out a writ of error, assigning as error the discharge of the rule to open judgment and set aside attachment; the making absolute the rule for judgment against garnishee; the decision that interest can be separated from the principal and attached in the hands of garnishee by creditors of defendant, and the granting of judgment against garnishee to be paid out of the interest in his hands.

*A. D. Hower* and *Franklin Bound* for plaintiff in error.

The defendant, being a lunatic, could not contract and give this note, and the committee has the right to defend. By the will, testator treated his son as a lunatic by using the word "committee." The estate was to be held and used in the sole discretion of the committee, and beyond the control of the beneficiary. The intent of the testator must be the governing consideration.

The words "to take charge of all his money," include both principal and interest. The purpose was one and indivisible.

In the cases relied upon by defendant in error, there was no discretion left in the trustee, and there was no committee; but the interest absolutely belonged to the *cestui que trust:* Shankland's Appeal, 11 Wr., 113.

Where the income is payable to the legatee at the discretion of the trustee, it is not liable to attachment under a judgment against the legatee: Keyser *v.* Mitchell, 17 P. F. Sm., 473.

The intention of the testator was to place the fund beyond the disposition or control of his son.

[Smith *v.* Savidge.]

*E. H. Painter* for defendant in error.

A lunatic is liable on his contracts, in the absence of any finding of lunacy at the time, for necessaries furnished him in proper amount, at legitimate prices, and without any fraud practiced upon him or advantage taken of his mental unsoundness: La Rue *v.* Gilkyson, 4 Barr, 375; 2 Green, Ev. 295; Chitty on Contr., 108, 112; Story on Contr:, 23, 45; Stock on Non Compos., 25, 30; 5 Wh., 379; Beales *v.* See, 10 Barr, 56; Wirebach *v.* Bank, 1 Out., 549; 1 Parsons on Contr., 385; Bank *v.* McCoy, 19 P. F. Sm., 204; Baxter *v.* Portsmouth, 2 C. & P., 178; Cook *v.* Parker, 4 Phila., 267; Dane *v.* Kirkwall, 8 C. & P., 679; 37 Leg. Int., 504; Wilder *v.* Weakley, 34 Ind., 181; Elliot *v.* Ince, 7 D. G. M. & G., 475.

The term "testamentary committee" is unknown to the courts, and known to the law only in the sense of "trustee" or "guardian:" Black's Case, 6 Harris, 434.

The interest or proceeds of a fund in the hands of a trustee is liable to attachment: Park *v.* Matthews, 12 Casey, 28. Wherever a party has a right of action, his creditors may attach it unless it be for wages: Ins. Co. *v.* Chambers, 10 Wr., 485; Kinney *v.* Hemphill, 2 W. N. C., 323.

There is no discretion allowed here as to the payment of interest, nor even of the principal. The words of the will show the intention that there should be an absolute payment of interest, and so much of the principal as is necessary for a comfortable support.

In attachment execution, the validity of the original judgment cannot be denied by the garnishee: Black *v.* Nease, 1 Wr., 433; O'Connor *v.* O'Connor, 2 Gr., 245; Fox *v.* Reed, 3 *Id.*, 81; Millingar *v.* Hartupee, 3 P. F. Sm., 366.

October 6, 1884, the opinion of the Court was delivered by GORDON, J.:

That, in Pennsylvania, a trust may be created for the protection of a spendthrift, lunatic, or feeble-minded child, is a proposition not now open to debate; nor is there any more doubt about the fact that the estate limited by such trust will be protected from the grasp of creditors. Indeed, without such protection the testamentary provision would be to no purpose. In the will before us, we have a trust created by the testator for the use and benefit of his son Levi, whom he evidently regarded as unfit to take proper care of himself, because of mental weakness, and this is, as we think, rendered obvious by the use of the word "committee" instead of trustee. Any

[Smith *v.* Savidge.]

doubt as to what the testator meant in the use of this word will be removed if we can consult the next succeeding clause of the will, wherein he provides: "My son Charles shall not have his share in his hands unless he doth absolutely reform of his evil habits. If he don't, then my executors shall petition to the court to appoint a suitable person as committee to take charge of his money in trust, and pay him the interest and so much of the principal as he may need for his support." Here we see this word "committee" used just as it is used in our acts of Assembly providing for the appointment of trustees for the care of the person and estates of lunatics and habitual drunkards, and as the language is similar, *mutatis mutandis*, with that used in the preceding clause when providing for Levi, we are not left in doubt as to the testator's intention, and this without reference to the proof adduced on the trial, including the finding of the inquest of lunacy. It is true that he did not make a strictly proper use of the word "committee," in that it properly designates an officer of the court appointed to take charge of and administer the estate of one *non compos mentis*, or of a drunkard; nevertheless, his intention could not have been better expressed by the most skillful paraphrase. He seems to have known that when the court appointed such an officer, the estate which would thereupon go into his hands would not only be put beyond the reach of the *cestui que use*, but also beyond the reach of subsequent creditors. He knew that in such case the property of the use party could only be appropriated, interest and principal, for the maintenance of such party. But that he designed by his will to effect the very same disposition as to Levi, seems to us very clear, inasmuch as he uses the very same language in the one case as in the other. If Charles does not reform, application is to be made to the court for the appointment of a committee "to take charge of his money in trust, and pay him the interest and so much of the principal that he may need for his support." But as to Levi, he being in such a mental condition that improvement cannot be expected, he provides for him at once, and directs that his son George shall act as his committee "to take care of all his money, and pay him the interest and so much of the principal that will give him a comfortable support." As we must in the one case understand that the interest is not to go to the donee absolutely, but to be appropriated to his support, so must we understand in the other also, otherwise we will be giving a different interpretation to the same language,

which it is not proper for us to do. It is to no purpose to attempt to liken this case to Park v. Matthews, 12 Ca., 28, and The Trust Company v. Chambers, 10 Wr., 485, and to say that the bequest was of the interest absolutely to Levi, and, therefore, attachable by his creditors; for here, as we have just shown, the expressed intention is the support of the donee, and for that purpose both principal and interest are to be used. To the mind of the testator it was certain that the whole interest would be required for that purpose, and perhaps part of the principal, but until this interest had been consumed in the support intended, nothing else could be appropriated to that end. We think it does not at all accord with the testator's design to hold that the trustee must take care that no more of the principal is expended than, with the interest, will furnish a comfortable support for the *cestui que use*, and yet that that interest must, nevertheless, be paid over to him without regard to the use which he is going to make of it. The result of such a construction would be that the principal of the bequest must alone be used for the purpose of maintenance, because, if the interest could be squandered or attached by creditors, there would be nothing else left for that purpose. This, however, seems so foreign to the testator's intention that we cannot adopt it as the true construction of his will. He evidently designed that his bounty should be so used as to provide the necessaries of life for as long a time as possible to his feeble-minded son, and we cannot consent to have a design so proper and benignant defeated, even though the interests of a *bona fide* creditor might be thereby advanced.

The judgment of the court below is reversed.